## Commonwealth *v.* Nowalk, Appellant.

Argued November 13, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*W. Robert Thompson,* with him *Montgomery & Thompson* and *John E. Baily,* for appellant.

*Wade K. Newell,* Special Assistant District Attorney, with him *Frank Throckmorton,* District Attorney, for appellee.

OPINION BY DITHRICH, J., December 11, 1946:

On an indictment charging (1) statutory rape and (2) assault and battery with intent to ravish, appellant was convicted and sentenced on the second count.

He is a widower fifty-eight years of age at the time of the trial, and the victim of his alleged assault is Mary Elizabeth Chamberlain, then aged three. The Nowalks and the Chamberlains were next door neighbors in Nema-

colin, a coal mining village in Greene County, Pennsylvania. The child had been accustomed almost daily to running in and out of the Nowalk home where appellant resided with an adult son and a housekeeper.

On Saturday, October 20, 1945, while her parents were shopping in Pittsburgh, the child and an infant brother were left in the care of a Miss Hannah Morrow. In midafternoon of that day after Miss Morrow had put the baby to bed, she was called downstairs by Mary Elizabeth, who said she wanted her "Sloppy Joe," a sweater coat. Miss Morrow asked her what she had done with her coat which she was wearing while playing in the yard where she had last been seen by Miss Morrow, and she said she had left it over at Bill's (appellant's) place. It was found there the following day in the basement where the child alleged appellant first assaulted her, later repeating the offense upstairs in a bedroom. When asked by Miss Morrow to go back to defendant's house and get her coat, she said she did not want to. Miss Morrow had washed the sweater coat and when she went outside to take it off the clothes line, the child told her what appellant had done or attempted to do to her. She kept repeating it throughout the afternoon, appeared nervous and excited, and to quiet her Miss Morrow said, "All right, Mary Beth, you tell your mother when she comes home." The first opportunity the child had after the return of her parents about 8:30 that evening, she told her mother, who at the time was bathing her, the same thing she had told Miss Morrow, and a few minutes later repeated it in the presence of her father, who had overheard part of what she had been telling her mother. Her parents had her examined that evening by a physician in general practice and the following day by a surgeon. They were both of the opinion that the child had not been penetrated, but their examination revealed three lacerations of traumatic origin at the posterior of the entrance to the vagina and definite tenderness in that area.

Appellant was placed under arrest the day following the alleged commission of the crime. He has filed three assignments of error. The first two complain of error in permitting the parents to testify to what the child told her mother about the alleged assault on the ground that it was too remote to be part of the res gestæ. As the case must go back for another trial for another reason, we shall not dwell at length on the point raised by the first two assignments of error other than to say that this testimony, especially that of the mother (the father's was restricted to what he had overheard the child telling her mother), meets the requirements of the definition of res gestæ adopted by the Supreme Court in *Com. v. Gardner,* 282 Pa. 458, 465, 128 A. 87, 90. It could not be ruled out by the mere lapse of time while the parents were away from home since the child complained to her mother at her earliest opportunity. "These incidents [of a particular litigated act] may be separated from the act by lapse of time, more or less appreciable": *Com. v. Gardner,* supra, page 465. And in *Com. v. Cupps,* 157 Pa. Superior Ct. 341, 343, 43 A. 2d 545, 546, we said, speaking by Judge RENO: "No fixed time or distance from the event can be established as a rule in determining what is a res gestæ utterance. Each case must depend upon its own circumstances. Com. v. Stallone, 281 Pa. 41, 126 A. 56." The first and second assignments of error are overruled.

The third assignment has to do with the cross examination by the Commonwealth of Mrs. Cora Hess, a Commonwealth witness. She had been appellant's housekeeper for approximately thirteen years and was called ostensibly for the purpose of showing "the past relations between the child and the defendant." She was not at home on the afternoon of October 20.

In the course of her examination, she was asked "Q. Mrs. Hess, within a month prior to October 20, 1945, . . . did you ever see Mr. Nowalk do anything

improper to this little girl?" She answered, "No, I didn't. Q. Did you at any time see him rub this little girl in any way of that kind?" The question was objected to as leading and the objection was sustained. She was finally asked by counsel for the prosecution "Q. And have you told us everything, Mrs. Hess, that he ever did that caused you to say something to him about it?" When the witness answered, in substance, that she had, the prosecuting counsel addressed the court and said, ". . . the Commonwealth pleads surprise and asks leave to cross examine the witness on statements heretofore made and recorded by the Official Court Reporter, who is in court." Counsel for defendant immediately objected, but the court ruled as follows (112a) : "This witness having admitted that she was interrogated by Mr. Grill of the State Police, and her statement reduced to writing by the Court Stenographer, . . ., a few days after this occurrence, the Commonwealth now having plead surprise as to the answers of the witness while on the stand, as compared to the statements made to Mr. Grill, we will now permit Commonwealth to cross examine this witness and seal a bill to the defendant."

The prosecuting counsel then proceeded to cross examine the witness and despite repeated and strenuous objections by counsel for the defendant on the ground that foundation for the plea of surprise had not been laid, the prosecuting counsel was permitted to get into the record the entire statement given to the state police, none of which was signed or sworn to and much of which was irrelevant and highly prejudicial to defendant.

"The rule that the party calling a witness is not permitted to ask leading questions and is bound by his testimony, is liberally construed in modern practice: Gantt v. Cox & Sons Co., 199 Pa. 208": Com. v. Reeves, 267 Pa. 361, 362, 363, 110 A. 158, 159. That has been clearly established by a long line of cases; but in none

of them have we found it to be so liberally construed as to permit cross examination by the party calling the witness without laying the foundation for it. In *Com. v. Reeves*, supra, chiefly relied on by appellee, the Supreme Court said, page 363 : "In the present case, the Commonwealth laid the foundation for the cross-examination of the witness, Thomas, as a hostile witness." An examination of the record discloses that it was laid in the following manner. In response to the district attorney's request for permission to cross examine the witness, the trial court (BALDRIGE, P. J., specially presiding, now the President Judge of this court) said (12a) : "You may do so if you can lay the foundation that at another time he testified differently or stated differently to you." He had previously testified before the coroner, and his former testimony was directly opposed on the same material facts to his testimony on the trial.

But in the instant case neither of the grounds that were held proper in the *Reeves* case appears, nor does it appear that there was anything in her testimony that needed to be neutralized or that was hurtful to the Commonwealth's case: Cf. *Selden v. Metropolitan Life Ins. Co.*, 157 Pa. Superior Ct. 500, 43 A. 2d 571. So far as appears from the record, neither the prosecuting counsel nor anyone connected with the office of the district attorney had talked to the witness before she was called upon to testify. As pointed out by former President Judge KELLER of this court in *Com. v. Viscosky*, 83 Pa. Superior Ct. 96, 106 : "It does not appear that the witness had made any statement to defendants' counsel contrary to his testimony on the stand, as in Com. v. Spardute, 278 Pa. 37, 45, or that he had ever been examined before on behalf of the party calling him, as in Com. v. Reeves, 267 Pa. 361. There was ample opportunity afforded defendants' counsel to question him before calling him to the stand . . ."

While we are ever mindful of the rule that "Whether such practice will be permitted is within the sound discretion of the court, and its action will not be reviewed by this court unless there is an abuse of that discretion": *Com. v. Reeves*, supra, page 363, we are not unmindful of the earlier rule which has never been relaxed that "The device of calling a witness whom the party is not compelled to call for the purpose of getting before the jury his contradictory statements made on other occasions cannot be allowed to succeed: Smith v. Price, 8 W. 447": *Com. v. Wickett*, 20 Pa. Superior Ct. 350, 355.

The third assignment of error is sustained. The judgment is reversed and a venire facias de novo awarded.