## Commonwealth v. McCafferty

*William Morgan,* for Commonwealth.
*James Jenks,* for defendant.

WOLFE, P. J. October 20, 1971.—Defendant has filed post trial motions following his conviction by the court, nonjury, on a charge of incest and sodomy.

The motions are for arrest of judgment and new trial and the reasons given are substantially the same, namely, the verdict was against the evidence, against the weight of the evidence, contrary to law and was founded on hearsay testimony.

The court is of the opinion if the evidence as admitted was proper there is sufficient weight and credibility thereto to sustain the verdict.

Defendant's main argument is the court erred in admitting an extra-judicial sworn statement by the victim, defendant's 14-year-old daughter that she committed sodomy with defendant and had sexual relations with him at his demand and threats. Defendant argues that this statement was not admissible as falling within the realm of the hearsay exclusion and, even it if were admitted procedurally properly, it was totally repudiated by the victim, both at the magistrate's preliminary hearing and before the court at time of trial, and, therefore, is insufficient evidence to sustain the conviction.

No cases on point have been found by the court and counsel has presented none relating particularly to this issue of the admission other than the general

rules that hearsay evidence is not admissible and that ex parte affidavits are not admissible.

We think the lack of ample cases is obvious considering the nature of the alleged acts. Sodomy and incest are not committed in public parks. Generally the victim of this type of crime is of tender years, reluctant to disclose even to their closest associates and relatives what occurred and are more reluctant to appear in court and testify against a parent.

Stated briefly, the victim gave a sworn statement before a magistrate in the presence of the Pennsylvania State Police and her sister that defendant, her father, had sexual intercourse with her and compelled her to commit sodomy upon him on various occasions approximately seven to eight months prior to the date of her statement made on June 2, 1970. These acts were done while defendant was drunk and the victim was reluctant to tell her mother about it but being fearful her father might do the same with her younger sister she advised her mother, who told her to go to the State Police and file the charges.

On the basis of the written statement, the State Trooper as well as the victim executed the complaint.

At the preliminary hearing, however, the victim totally repudiated and recanted her written sworn statement but, notwithstanding, the magistrate bound defendant over to court and again, at trial, the victim repudiated and recanted the written statement and advanced as her reason therefor she was originally angry with her father because he had "grounded her" for misconduct and that her sister's boyfriend had encouraged her to sign the statement as well as her sister because of her father's negative attitude towards the boyfriend and also the juvenile personnel of the county encouraged her to make the statement.

Defendant presented no witnesses on his behalf but

testified himself and denied that the charges were true.

The Commonwealth presented the victim as a hostile witness and gave its reasons therefor that the victim had repudiated her written statement at the preliminary hearing and likely as not would do the same at trial. Over objection, the Commonwealth was permitted to present the victim as a hostile witness. The Commonwealth also presented testimony from the juvenile personnel and personnel from Child Welfare, who both testified they had prior conversations with the victim concerning the drinking habits of her father and her fear of him, and that they were summoned by the school director to talk to the victim after she had disclosed to the school principal her father's activities and that they both believed the victim at that time and did not believe her in her repudiation of the written statement.

The court is of the opinion that if the victim were the complainant solely, it would be difficult to find that there was sufficient evidence to convict. We think, however, there is sufficient evidence in the Commonwealth's case through the complaining officer who executed the complaint and who believed the victim at the time he filed the charges on the basis of his two prior conversations with her and he being present also when she executed the complaint.

To this, however, defendant asserts that the conviction was totally based upon hearsay testimony (to the officer), which was repudiated and, therefore, there is insufficient evidence to sustain this conviction.

We do not interpret the rules of evidence in this light.

Hearsay evidence is that given by a person who relates not what he knows of his own knowledge but

what he has heard from others and, hence, his evidence which derives its value, not from the credit to be given to the witness upon the stand but, in part, from the veracity and competency of some other person for the probative force of that to which he testifies: Corser v. Hale et al., 149 Pa. 274, 24 Atl. 285 (1892). Statements not made in court under the sanctity of an oath which are sought to be related by the witness on the witness stand are hearsay: Rudsill v. Cordes, 333 Pa. 544, 5 A. 2d 217 (1939). A writing may be hearsay: Halberstadt v. Bannan, 149 Pa. 51, 24 Atl. 82 (1892).

On the other hand, the testimony of a witness as to what some other person said is properly excluded when offered as evidence of the truth of the facts asserted, but the rule does not apply where the testimony is offered merely to prove that the statement was made: Commonwealth v. Ricci, 332 Pa. 540, 545 (1939). Hence, we think defendant's argument must fall for two reasons. First, the written statement given by the recanting procecutrix was not obtained by her through another person, but, in the first instance, was given by her, not as a witness but as the victim of the assault; second, the statement was used by the Commonwealth not in corroboration of the victim's original oral statements to the Commonwealth and others, but to attack her credibility after she repudiated the statement. Defendant fails to consider the witness was the prosecutrix. If his position be correct, we do not see how any charge could be legally filed against one alleged to have committed a crime unless defendant is first arrested before the complaint is made out and presented before the magistrate spontaneously with the complainant.

The fact the prosecutrix later recants her testimony does not relegate her original statement as the victim to the role of hearsay testimony. In this event, the

issue then becomes for the court one of credibility of which statement to believe when the Commonwealth presses its complaint.

It is at this point that the court concludes it committed error. At trial, the Commonwealth offered the victim as a hostile witness and, over objection of defense counsel, she was permitted to be treated as a hostile witness at length, being confronted with her prior written inconsistent statement upon which the Commonwealth based its case. The Commonwealth had knowledge prior to trial that the victim had repudiated her allegations and indeed, had done so at the preliminary hearing. For this reason, the Commonwealth was not, in fact, surprised. Commonwealth v. Turner, 389 Pa. 241, 252 (1957), outlines the requirement that the proper foundation must be laid in order to impeach one's own witness and plead surprise. In the Turner case, it was held what the district attorney did was to intentionally and deliberately set the stage for his request to crossexamine a witness in order to get before the jury the contradictory prior statements of the witness helpful to the prosecution. The court held that this is never permissible: " '. . . it is fundamental . . . that the party offering the witness must be really surprised at his testimony.' Young v. United States, [97 F. 2d 200, 205] . . . 'Generally, to entitle the party calling the witness to relief from the situation caused by the witness's adverse testimony, it is essential that such party be really surprised by such testimony (citing cases).' Surprise, in its legal connotation, does not embrace disappointment or a feeling of frustration on the part of the one seeking to have a witness testify other than he has indicated he will do."

We do not here accuse the district attorney of deliberately laying the foundation for an adverse witness but clearly the Commonwealth had prior

knowledge and warning that this witness-victim would, likely as not, repudiate the written statement.

As stated in Laub Trial Guide, 1959-1970 Supplement, sec. 46.5 "It is never permissible to offer a witness whose testimony the offerer knows in advance will be adverse, in order to get before the jury in the form of impeachment, contradictory statements of his which are useful to the offerer."

In order to plead surprise, a proper foundation must be laid: Commonwealth v. Nowalk, 160 Pa. Superior Ct. 88, 93 (1946). On the other hand, see Commonwealth v. Gurreri, 197 Pa. Superior Ct. 329, 334 (1962), citing Henry on Pennsylvania Trial Evidence (2d Ed., page 526) holding that recent decisions have not been strictly followed to the effect that the mere fact of calling a witness admits the entire truth of everything the witness may state and the calling party may advance necessary questions to prevent an injustice and to elicit the truth.

We do not interpret this case as going so far as to hold that if a victim repudiates her prior statement to a charge she levied of incest and sodomy, it opens the door for the Commonwealth to have her declared a hostile witness when it knew of the changed story.

Another compelling reason concludes that a new trial should be granted. In Commonwealth v. Kibler, 215 Pa. Superior Ct. 367 (1969), wherein the witness for the Commonwealth absolved the defendant from the charge by recanting his testimony, the court permitted the Commonwealth to plead surprise and confronted the witness with his prior testimony and inconsistent statements given to the police. The issue was then whether such testimony, since it was accepted by the jury, was sufficient to meet the burden placed upon the Commonwealth of proving the defendant guilty beyond a reasonable doubt. Therein the court stated: "There can be no dispute as to the right of a

jury to pass on the credibility of a witness, and to believe all or a part or none of the testimony of any witness for the Commonwealth or for the defense (citing cases). Also, while it is the province of the trial judge to determine, as a matter of law, whether the prosecution's proof has been sufficient in volume and quantity to present a case to the jury and overcome the presumption of innocence, generally it is for the jury to determine the weight and effect of evidence. It is always for the jury to weigh conflicting testimony. Commonwealth v. Alessio, 313 Pa. 537, 169 A. 764 (1934). However, since the final statement of a witness is the one which controls, Wolansky v. Lawson, 389 Pa. 477, 133 A.2d 843 (1957), where a witness who has testified subsequently recants his testimony on the witness stand, *the trial judge must instruct the jury to disregard the previous testimony.* (Italics supplied.) This rule has been recognized by this Court in criminal cases. Commonwealth v. Bartell, 184 Pa. Superior Ct. 528, 136 A. 2d 166 (1957), allocatur denied. *It is more applicable where the witness positively repudiates his testimony.* Wolansky v. Lawson, supra." (Italics supplied.)

See also the recent case of Commonwealth v. Knudsen, 443 Pa. 412 (1971), holding a party is permitted to crossexamine his own witness when it is believed the interest of truth and justice so requires.

In the current case, there has not been a strict recantation of the testimony because there was no prior testimony except an ex parte affidavit, still, it has the same effect by leaving, in this case, the Commonwealth not merely without a witness who changes her story, but without a victim who now asserts she committed perjury by making the allegations under oath. But we do not have to resolve the question of recanting testimony but rather repudiation of a prior statement. This may be a matter of logomachy but the cases make

a distinction between the two. See Commonwealth v. Lopinson, 427 Pa. 284, 313 (1967); Commonwealth v. Palarino, 168 Pa. Superior Ct. 152 (1951); Commonwealth ex rel. Kimble v. Keenan, 194 Pa. Superior Ct. 169, 173 (1960), all holding, in effect, that recanting testimony is testimony or evidence given under oath subsequent to trial reversing the witness' position and testimony at trial. It is held that this type of testimony is extremely unreliable and subject to close scrutiny. Here, however, we have the reverse, the repudiation of the victim of her allegation that the crime was inflicted upon her even to the point that her repudiation was corroborated by her affidavit, under oath, prior to trial by stating the charges she levied against her father were totally false and with no foundation in fact.

The court does not accept this and finds the subsequent repudiation of the charge was totally unreliable but yet, the court as a matter of law and considering the burden of proof of the Commonwealth, although it is convinced of defendant's guilt, is equally convinced the Commonwealth has failed to carry its burden of proof due to the lack of sufficient admissible evidence.

The record discloses there is no irregularity on its face and, therefore, the motion for arrest of judgment will be denied but the motion for new trial will be granted and the following order is made:

## ORDER

And now, October 20, 1971, the court grants the motion for new trial. The motion for arrest of judgment is denied. Exceptions noted to the Commonwealth.