580 A.2d 784

COMMONWEALTH of Pennsylvania, Appellant,

v.

Edward R. SANFORD, Appellee.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Edward R. SANFORD, Appellant.

Superior Court of Pennsylvania.

Argued March 22, 1990.

Filed Sept. 10, 1990.

Petition for Allowance of Appeal
Denied Jan. 23, 1991.

582

584

Edward M. Clark, Asst. Dist. Atty., Pittsburgh, for Com., appellant in No. 1850, and for Com., appellee in No. 1900.

Shelley Stark, Public Defender, Pittsburgh, for appellant in No. 1900, and for appellee in No. 1850.

Before CAVANAUGH, DEL SOLE and HUDOCK, JJ.

HUDOCK, Judge:

The defendant, Edward R. Sanford, was charged with and, at the conclusion of a non-jury trial, convicted of attempted rape, indecent assault, and corruption of minors. In response to the defendant's motion, the trial court granted a new trial. The defendant's motion in arrest of judgment was denied. The Commonwealth appeals the order granting defendant a new trial, and the defendant cross-appeals from that portion of the order denying his motion in arrest of judgment. For the reasons set forth below, we affirm the order.

At the time of the incident giving rise to the criminal charges against the defendant, the victim was a girl of three years of age. After the victim arrived home from her neighborhood babysitter's residence, her mother noticed that the child was following her from room to room. While

the mother was using the bathroom, the victim entered and stated "Pap Pap kissed me, ... on my face with his tongue." The victim knew the appellant, her babysitter's husband, as "Pap Pap." Upon questioning by her mother, the child also indicated the appellant had attempted to sexually assault her. The mother examined the child and discovered the child's vaginal area was inflamed, as well as the presence of an oily substance. The child was taken by her parents to Children's Hospital in Pittsburgh where she was examined by Dr. Scott Jaeger. Prior to conducting his physical examination of the child, Dr. Jaeger initiated a conversation with her. During the conversation, the child repeated her version of the incident concerning "Pap Pap" and, when asked, indicated that she had experienced pain in her vaginal area during the assault and that the defendant threatened her. At trial, the statements made by the child to both her mother and Dr. Jaeger were admitted over objection.

In its post-trial order, the trial court found the circumstances surrounding the child's incriminating statements to her mother did not fall within the "excited utterance" exception to the hearsay rule and that the victim's statements to Dr. Jaeger lacked sufficient indicia of reliability for the application of any hearsay rule exception recognized in Pennsylvania. The court concluded the error in allowing such testimony was prejudicial.

## COMMONWEALTH'S APPEAL

### APPEAL AT NO. 01850 PITTSBURGH 1988

The trial court apparently reasoned that there was no evidence that the victim was in shock or under the stress of excitement when she made the statements to her mother, therefore the admission of the mother's testimony was reversible error. The defendant echos this analysis. The court reached this conclusion because the mother's testimony suggested the child's demeanor was unremarkable. The trial court recalled that the mother testified that the child

appeared to be her "usual self" and even appeared to be "smiling."

The Commonwealth argues the out-of-court statements made by the non-testifying three-year-old victim to her mother were unsolicited and, under the circumstances, contemporaneous; they were marked by a spontaneity born of excitement produced by an event of startling magnitude. Further, the Commonwealth asserts there is nothing in the record to suggest the statements were the product of reflection, premeditation or design, and there is substantial physical evidence corroborating the disputed statements. The Commonwealth concludes that there was sufficient indicia of reliability associated with the child's declarations to her mother so as to permit their admission under the excited utterance exception to the hearsay rule.

█ Preliminarily, it is necessary to comment on the Commonwealth's suggestion that the corroborating physical evidence discovered by the mother during her physical examination of the child can be viewed as further indicia of reliability of the truthfulness of the child's statements. In a recent decision, the United States Supreme Court commented that

"the use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility."

*Idaho v. Wright,* —— U.S. ——, ——, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638 (1990). The *Wright* court added that "the presence of corroborating evidence more appropriately indicates that any error in admitting the statement might be harmless, rather than that any basis exists for presuming the declarant to be trustworthy." *Id.* at ——, 110 S.Ct. at 3150–51. (Footnote omitted.) (Citations omitted.)

■ The question of whether hearsay statements possessed sufficient indicia of reliability so as to withstand scrutiny under the Confrontation Clause of the Sixth Amendment, thereby rendering such statements admissible at trial, was discussed at length by the *Wright* court. Recalling its earlier decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the court found that "admission [of a hearsay statement] under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded long standing judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements." *Wright* at ——, 110 S.Ct. at 3147. (Citations omitted.) "[I]f the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." *Id.* at ——, 110 S.Ct. at 3149. "[S]tatements admitted under a 'firmly rooted' hearsay exception are so trustworthy that adversarial testing would add little to their reliability." *Id.* The *Wright* court cited the excited utterance exception to the hearsay rule as an example of a firmly rooted exception where "the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous." *Id.* (Citations omitted.) Thus, if it is determined that a statement qualifies as an excited utterance, it is not necessary to demonstrate any further indicia of reliability.

■ The excited utterance exception to the hearsay rule was explained in *Commonwealth v. Pronkoskie*, 477 Pa. 132, 137, 383 A.2d 858, 860 (1978) as follows:

> ... a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as

to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*See also, Wright, supra* (the basis for the excited utterance exception is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation.)

In considering the facts of particular cases where this issue has been raised, the courts have considered: 1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so. *Commonwealth v. Blackwell*, 343 Pa.Super. 201, 211, 494 A.2d 426, 431 (1985). (Citations omitted) These considerations provide the guarantees of trustworthiness which permit the admission of a hearsay statement under the excited utterance exception. "It is important to note that none of these factors, except the requirement that the declarant have witnessed the startling event, is in itself dispositive. Rather, the factors are to be considered in all the surrounding circumstances to determine whether a statement is an excited utterance." *Id. See also, Wright, supra* (particularized guarantees of trustworthiness must be shown from the totality of the circumstances.)

We have carefully examined the record of this case in light of the above enumerated criteria and conclude that the trial court erred in determining that the mother's testimony concerning the statements made to her by the child were inadmissible hearsay. With regard to whether the child witnessed or participated in the startling event, the defendant asserts that simply because the child claims to have perceived the event does not establish that she, in fact, did perceive or participate in the event. We disagree. Although the child did not testify, and there were no other witnesses to the misconduct, the testimony of both the child's mother and the examining physician, relating to their respective observations when they examined the girl, cir-

cumstantially established that the event itself did occur. Clearly then, the child had perceived or participated in "some unexpected or shocking occurrence."[1] *Commonwealth v. Pronkoskie, supra.* This is not a situation where the Commonwealth is attempting to use the excited utterance itself to prove the existence of an exciting event. *See e.g., Commonwealth v. Barnes,* 310 Pa.Super. 480, 456 A.2d 1037 (1983).

 The fact that the child's demeanor was unremarkable, even if true, is not (necessarily) singularly dispositive of our inquiry. We hasten to note that the trial court's conclusion concerning the child's demeanor is contrary to a fair reading of the record. At trial, it was clearly established that the child engaged in what can be considered ordinary casual conversation with her mother upon returning home, especially since she was not expecting her mother to be there, and even began watching television. It is equally true, however, that the child followed her mother from room to room and even entered the bathroom while her mother was using it. It is also true that the child offered her statement of what had occurred to her without solicitation. Lastly, the child's mother testified that when the declaration was made, the child "had a different look on her face with a smile.... [W]hen she was telling me, it was like she didn't know whether it was right or wrong." (Trial Testimony at 53)

Earlier cases involving statements found to be inadmissible as excited utterances contained discussions of the fact that the declarant appeared to be calm and unemotional at the time the statement was uttered. *See, Commonwealth v. Pronkoskie, supra; Commonwealth v. Summers,* 269 Pa.Super. 437, 410 A.2d 336 (1979). *But cf., Common-*

1. The parties make reference to the question of whether the defendant's misconduct, if it occurred, would amount to such an unexpected and shocking occurrence which would engender the emotional response permitted by the exception. Without hesitation, we believe that such misconduct, when established, is unquestionably of the kind leading to overpowering emotions so as to satisfy that particular requirement.

*wealth v. Nowalk,* 160 Pa.Super. 88, 50 A.2d 115 (1946) (where Court noted that the child-declarant was visibly nervous and excited.) However, there is no requirement that the declarant be emotionally overpowered, but rather must be speaking under the stress of excitement. Packel & Poulin, *Pennsylvania Evidence,* § 803.2, p. 567. We find that the evidence in the case at bar sufficiently demonstrated that the child was speaking under the stress of excitement when she announced to her mother the devastating experience to which she had been unwillingly subjected.

The defendant's reliance on this Court's decision in *Commonwealth v. Haber,* 351 Pa.Super. 79, 505 A.2d 273 (1986) as prohibiting admission of the child's statements to her mother is misplaced.[2] In *Haber,* our Court found error in the trial court admitting the testimony of the mothers of the two victims as to statements concerning the sexual assaults committed by the defendant, which were made to them by their children. In concluding that the mothers' testimony did not come within any exception to the hearsay rule recognized in Pennsylvania, the Court focused the absence of any evidence demonstrating that the children's statements were made under the stress of excitement caused by an exciting event or condition. The Court noted that the first relevant assertion was a comment made by one of the children during a conversation between his older brother and mother. The other assertions were made during interviews subsequently conducted by the mothers with their children. *Id.,* 351 Pa.Superior Ct. at 82, 505 A.2d at 275. Because the record was silent as to the length of delay between the alleged criminal conduct and the children's assertions to their mothers, it was impossible to determine whether the statements were made "under the stress of excitement caused by an exciting event or condition, as is required," *id.,* or whether the statements were

2. As a result of the *Wright, supra,* decision, it is unnecessary to address the defendant's assertion that *Haber* prevents the admission of hearsay statements where "the physical details ... lend an aura of reliability and trustworthiness to the out-of-court declarations[.]" (Defendant's brief at 21.)

the product of reflection or fabrication. The facts of the instant case warrant a different result.

 We also do not find the fact that, except for her first statement that "Pap Pap kissed me ...", all other statements made by the child were done so in response to inquiries posed by the child's mother reason enough to exclude the testimony relating to those statements. The weight of authority in this Commonwealth is that responses to questions are not, *per se,* excluded from consideration as excited utterances. This is true even though one might conclude that such a response requires the kind of reflection which would preclude it from being considered an excited utterance. *See, Commonwealth v. Cooley,* 465 Pa. 35, 348 A.2d 103 (1975); *Commonwealth v. Ross,* 345 Pa.Super. 571, 498 A.2d 972 (1985); *Commonwealth v. Von Smith,* 303 Pa.Super. 534, 450 A.2d 55 (1982); *Commonwealth v. Galloway,* 302 Pa.Super. 145, 448 A.2d 568 (1982).

However, in *Commonwealth v. Kasko,* 322 Pa.Super. 62, 469 A.2d 181 (1983), this Court found children's statements in response to questions posed by their parents inadmissible because, among other reasons, the questioning itself demanded reflection. The children were observed by one of their mothers in what was thought to be sexual activity. Ultimately, the children inculpated the appellant therein as the individual responsible for teaching them that type of conduct. In vacating the judgment of sentence, the court focused on the fact that the crucial statements from the children came, not only after fifteen minutes of questioning by one parent had *failed* to produce the desired response, but after two undoubtedly upset parents together interrogated the children. The Court noted that while the fifteen minutes itself afforded time for reflection, the parental interrogation demanded that reflection.[3]

3. The Court also found that the spontaneous utterance did *not* relate to the exciting event—being caught in the act of doing something wrong by one of the parents. The Court concluded that the act in which the children were caught was not the litigated fact to which their statements related. *Cf. Commonwealth v. Haber, supra.*

The evidence presented in the instant matter regarding this issue simply does not reveal the type of questioning which called for reflection by the child-declarant. The record evinces that the mother's questions were themselves asked in response to the child's statement. The child's statement was punctuated by occasional questions such as "what?," "kissed you where?," "where?," "what else happened?," and "he did what?." This exchange does not appear to have been so unhurried or reflective as to render the statement inadmissible.

■■■ The defendant also argues that the statement lacked the contemporaneous nature required to be considered an excited utterance. The defendant maintains the only time the acts could have occurred was in the morning since that was the only time he was alone with the child. Yet, the child did not reveal the incident until after she arrived home.[4] The defendant concludes that the lengthy opportunity for the child to speak, throughout the day, to her sitter (his wife), to her sister during the short walk home, and immediately to her mother upon arriving home, coupled with the time lapse between the alleged incident and her making the statements, render the statements stale. However, as we said in *Commonwealth v. Nowalk*, 160 Pa.Super. 88, 91, 50 A.2d 115, 116 (1946), "[n]o fixed time or distance from the event can be established.... Each case must depend on its own circumstances." Additionally, our Supreme Court commented that a relaxation of the rule, that the statement be sufficiently contemporaneous with the event where the child-declarant is the victim of a sexual assault, "recognizes both the likelihood of a young child's inability to comprehend the purpose of the assault and the possibility of the child's hesitancy to discuss the matter for fear of incurring punishment." *Pronkoskie* at 142 n. 9, 383 A.2d at 863 n. 9, *citing* Annotation, 83 A.L.R.2d 1361.

4. The child arrived home around 6:05 p.m. and waited "nearly 30 minutes" before making the statements to her mother.

Examining all attendant circumstances, we believe it would be unreasonable to require the child to speak to her sitter, who is the defendant's wife. Additionally, although the assault upon her occurred during the morning hours, the child remained in the defendant's home (where the assault took place) for the entire day until her older sister arrived to escort her home. During this period, the child was unaware that her mother had not gone to work that day due to illness. What is reasonable, however, is to expect the child to be confused and uncertain in the aftermath of her experience. This confusion and uncertainty is demonstrated by the mother's testimony regarding the child's inconsistent demeanor, conduct and facial expressions when making the statement. *Compare, Commonwealth v. Blackwell, supra* (the combination of factors presented in *Commonwealth v. Green,* 487 Pa. 322, 409 A.2d 371 (1979) and *Commonwealth v. Little,* 469 Pa. 83, 364 A.2d 915 (1976) compelled the conclusion that the statements at issue in each case were not spontaneous.)

We conclude, therefore, that the child's statement to her mother, concerning the assault upon her by the defendant, satisfied the criteria of the excited utterance exception to the hearsay rule and that the court erred in granting the defendant's motion for a new trial on this basis.

■■■ Regarding the testimony of the treating physician, as to the child's statements, the Commonwealth argues that the statements were properly admissible at trial since they were made for purposes of medical treatment, an exception to the hearsay rule recognized in Pennsylvania. Such an exception was recognized by the United States Supreme Court in *Wright* as being a well-rooted exception which was based on the belief that persons making such statements are highly unlikely to lie. Thus, if the statements qualify under this exception, no further guarantees of trustworthiness need be shown. *Wright* at ——, 110 S.Ct. at 3147.

This exception was first recognized in this Commonwealth by the Pennsylvania Supreme Court in *Cody v. S.K.F. Industries, Inc.,* 447 Pa. 558, 291 A.2d 772 (1972), a

worker's compensation case. The *Cody* court expanded upon the then-existing law "that statements to a doctor were admissible insofar as they were necessary and proper for diagnosis and treatment and referred to symptoms, feelings and conditions", *id.*, 447 Pa. at 566, 291 A.2d at 776, to include statements to the physician on the cause of the accident as well. *Id.* The *Cody* court considered its resolution of the issue, that there was "pressing necessity" to admit the physician's testimony recounting the victim's explanation of the circumstances of his injuries, *id.*, 447 Pa. at 567, 291 A.2d at 777, "consonant with the demands of justice." *Id.* The Court, quoting McCormick, held that " 'statements as to external cause when relevant to treatment and made to a doctor employed for that purpose are [i.e., should be admitted as] evidence of the fact stated ... particularly in actions for death where there were no eye-witnesses other than the victim....' *Id.*" *Blackwell*, at 215, 494 A.2d at 433. The *Cody* court reasoned that where "there are no circumstances casting suspicion on the genuineness of the utterances, statements as to cause clearly meet the trustworthiness test." *Cody* at 566, 291 A.2d at 776.

▆▆▆ The defendant argues, as the trial court found, that there is no evidence demonstrating the child's understanding of the connection between truthful responses to the doctor's inquiries and receiving proper medical treatment. "In fact, there was no evidence that [the child] even realized that she was injured or that she had a medical problem." (Brief for Defendant at 24.) We agree that the very premise upon which the exception is based is that the "declarant's purpose in making [the assertion] must have been to aid medical diagnosis or treatment." Binder, *Hearsay Handbook*, 2d ed. § 6.01, at 125. "Conversely, if [the] declarant's assertion was not made for the purpose of medical diagnosis or treatment, it does not qualify for this exception to the hearsay rule, even though it does, in fact, aid a physician in diagnosing or treating the patient's ills." *Id.* at 126. (Citation omitted) However, in all cases where the declarant is unavailable, usually because of death, we

believe that the information communicated was thought by the declarant to be of some help to the physician in treatment. *See Blackwell* at 223, 494 A.2d at 437 ("the statements were made [by the patient who later died] so that his condition could be diagnosed and treated; and while they described the cause of his condition—his abduction and robbery—this description was immediately relevant to his diagnosis and treatment, which is to say, in giving it, he must have thought of himself as giving information that would enable the hospital to help him.") *See also, Wright* at ——, 110 S.Ct. at 3149 ("Likewise, the ... 'medical treatment' [exception] to the hearsay rule [is] based on the belief that persons making such statements are highly unlikely to lie.") Thus, the more precise question which we must answer is whether this same belief is present when the assertions at issue are from the mouth of a three-year-old child. The Commonwealth submits that it does, and we agree.

In support of its position, the Commonwealth cites cases from other jurisdictions where such a position was adopted. In *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987), a five-year-old girl was sexually assaulted. The child was ultimately ruled unavailable to testify due to psychological trauma induced by the sexual abuse. The *Robinson* court expressed its concern with the vulnerability of such victims who "may not always grasp the relation between their statements and receiving effective medical treatment." *Id.* at 809. The *Robinson* court acknowledged that the child-victim's motive for making the disputed statements was not apparent, but nevertheless found them admissible because they were taken for the purposes of diagnosis and treatment, and there was nothing in the record to suggest an ulterior motive. *Id.*

 Likewise, in the case at bar, the record does not indicate the child's motive in making the statements, other than they were made in response to Dr. Jaeger's questions. In Weinstein's treatise, where it is emphasized that, regardless of the declarant's motive, doctors customarily and

reasonably rely on such statements, " 'a fact reliable enough to serve as a basis for diagnosis is also reliable enough to escape hearsay proscription....' " *Goldade v. State*, 674 P.2d 721, 726 (Wyo.1983), *quoting* 4 WEINSTEIN'S EVIDENCE § 803(4)[01] p. 803–129. While the record may not indicate the child's motive for making the assertions, the record does indicate that the child had experienced a traumatic event, was physically examined by her mother, and taken to the hospital for further examination. Additionally, the statements were made to a physician while in the emergency room. We find these factors sufficient to believe that the child understood the need to be truthful in her responses to the inquiring physician.

The defendant also argues that the substance of the statements being considered are beyond the scope of the exception recognized in *Cody* because statements concerning identity and fault are outside the exception since they "are simply not pertinent to the medical treatment." (Brief for Defendant at 26.) The Commonwealth argues the statements identifying the defendant as the perpetrator of the assault were highly relevant to treatment, implicating, as they did, concerns regarding the care of the child as well as reasonable efforts with respect to the identity and control of communicable, sexually transmitted diseases. Based on the record before us, we disagree.

It is true that Dr. Jaeger testified, at the hearing on the defendant's habeas corpus petition, that the identity of the assailant was a relevant inquiry because of his concern for not only the likelihood of sexually transmitted diseases, but also for the psychological well-being and safety of the child. This testimony, however, was not incorporated as part of the trial record.[5] Thus, although such testimony may have sustained the Commonwealth's position, the absence of it renders that position untenable. *See, State v. Nelson*, 138

---

5. Had such testimony been presented at trial, whether directly or by way of incorporation, our conclusion as to the child's statements identifying the defendant as her assailant may well have been different.

Wis.2d 418, 406 N.W.2d 385 (1987); *State v. Vosika*, 83 Or.App. 298, 731 P.2d 449 (1987); *Goldade, supra.*

Thus, the physician's testimony regarding the child's statements as to the events which gave rise to her visit to the emergency room was properly admitted at trial. However, that portion of the physician's testimony concerning the child's statements wherein she identified the defendant as her assailant should not have been admitted. Although the trial was conducted without a jury, we are not prepared to say that the admission of the doctor's testimony relating to the child's identification of the defendant was harmless error. "For an error to be harmless because of overwhelming evidence, 'the untainted evidence relied upon must be uncontradicted.'" *Commonwealth v. Whiting*, 358 Pa.Super. 465, 477, 517 A.2d 1327, 1333 (1986), *appeal den.* 515 Pa. 606, 529 A.2d 1080 (1987). Accordingly, the defendant is entitled to a new trial.

## DEFENDANT'S CROSS-APPEAL

### APPEAL AT NO. 01900 PITTSBURGH 1988

[16] The first issue presented by the Defendant in his cross-appeal is a challenge to the sufficiency of the evidence. The standard of review for such challenges is well-established:

The sufficiency of the evidence must be evaluated upon the *entire* trial record. All the evidence must be read in the light most favorable to the Commonwealth [as the verdict winner below] and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove. Also, in passing upon such a motion, all evidence actually received must be considered whether the trial rulings thereon were right or wrong.

*Commonwealth v. Strunge*, 287 Pa.Super. 212, 216, 429 A.2d 1176, 1178 (1981). (Citations omitted) When viewed in this light, we conclude that the court below did not err in denying the defendant's motion in arrest of judgment.

■ The defendant also argues that he was deprived of his constitutional right to cross-examine and confront his accuser since his conviction is based solely on hearsay evidence. This argument is meritless. It is well-settled "that the [Confrontation] Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause." *Wright* at ——, 110 S.Ct. at 3145. (citation omitted.) "The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule." *Id.* at ——, 110 S.Ct. at 3146. (citations omitted.) Because we have determined that the child's statements, with the exception of the statements to Dr. Jaeger identifying the defendant as the perpetrator of the assault against her, were properly admitted under firmly rooted exceptions to the hearsay rule, the Confrontation Clause was not violated. *Wright, supra.* Thus, we conclude that the trial court did not err in denying the defendant's motion in arrest of judgment.

The order granting a new trial is affirmed. The case is remanded for further proceedings. Jurisdiction is relinquished.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting.

I respectfully dissent. I recognize that this case is another in a series of cases which demonstrate the tension between the desire to fairly and fully prosecute in cases involving child abuse on the one hand and allegience to long settled evidentiary principles on the other. However, I disagree with the reasoning of the majority with respect to both hearsay issues involved in this case. For reasons expressed in *Commonwealth v. Haber*, 351 Pa.Super. 79, 505 A.2d 273 (1986), I would find that the child's statements in this case, as testified to by her mother, are beyond the standards which must be met in order to admit a statement as excited utterance. Specifically, I believe that the time

lapse and the interrogational nature of the mother's conversation with the child are facts which remove this case from the ambit of the excited utterance exception to the hearsay rule.

Secondly, I believe that in order to admit any statement to the physician who examined the minor victim, it is necessary to demonstrate that the declarant's purpose in making the statement must have been an aid to medical diagnosis or treatment. In this matter there is no evidence that such was the case and, in fact, the examining physician testified that he specifically elicited the identification information from the child by questioning in order to fulfill what he considered to be his medico-legal responsibilities. Moreover, there appears to have been no attempt to place evidence in the record in order to fulfill the obligation that the declarant be "unavailable" before a determination that alleged hearsay evidence may be received.

I join in the majority's order that a new trial be granted since I do not believe that either the physician's or the mother's statement should have been admitted in evidence. It would seem to me, however, that upon retrial the Commonwealth will have available to it the provisions of recently enacted statute, 42 Pa.C.S.A. 5985.1. Since this is an evidentiary rule, I see no reason why it would not be available to the Commonwealth on the retrial of this case and if the provisions of the rule are satisfied, might make the child's statements in this case admissible in evidence.[1]

---

1. See, however, our comments in *Commonwealth v. Haber,* 351 Pa.Super. at 82–83, 505 A.2d at 275.