J-S70004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANIEL BURRUS | |
| Appellant | No. 631 EDA 2013 |

Appeal from the Judgment of Sentence January 23, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008742-2009

BEFORE:  LAZARUS, J., MUNDY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:              **FILED DECEMBER 11, 2014**

Daniel Burrus appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury found him guilty of criminal attempt to commit murder,[1] criminal conspiracy to commit murder,[2] aggravated assault,[3] criminal conspiracy to commit aggravated assault,[4] firearm not to be carried without a license,[5] and possession of an instrument of a crime.[6]  After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 901(a); 18 Pa.C.S. § 2502.

[2] 18 Pa.C.S. § 903(a).

[3] 18 Pa.C.S. § 2702.

[4] 18 Pa.C.S. § 903(a).
*(Footnote Continued Next Page)*

On March 30, 2009, at approximately 10:00 p.m., Philadelphia Police Officer Christopher Egan and his partner responded to radio reports of gunshots in the area of Jefferson and Nassau Streets in Philadelphia. After seeing no signs of a shooting on the main streets, the officers walked down an alleyway. As they approached 63rd Street from the alleyway, the officers heard the victim, Richard Jackson, call for help and found him on his back, bleeding from multiple gunshot wounds. The officers asked Jackson what happened to him, and Officer Egan testified that the victim responded that he and Burrus were back in the alley, he heard gunshots, and he saw Burrus "run off with his cell phone." Trial Court Opinion, 2/19/14 at 4.

After the victim was taken to Hahnemann Hospital, Officer Egan and his partner secured the area and observed seven spent shell casings and a cell phone near the area where the victim had been discovered. Jackson was shot five times in the left arm and chest area, four times in the abdomen and groin area, two times in the left leg, and once in the right buttock. Despite his critical injuries, Jackson survived.

At Burrus' preliminary hearing, Jackson testified that he went into the alley with his childhood friends Burrus, Darryl Byrd, and Robert Sharp, where they drank Hennessey together. Jackson testified that he was very

(Footnote Continued) ─────────────

[5] 18 Pa.C.S. § 6106(a)(1).

[6] 18 Pa.C.S. § 907.

- 2 -

drunk. He remembered a verbal exchange with Burrus, who then hit him in the head with a gun. Burrus and Byrd then shot him. Jackson was unable to testify at trial but his preliminary hearing testimony was admitted into evidence.

Sharp testified that the four men involved in the incident, including the victim, had been best friends. Sharp denied being present when Jackson was shot, but did testify that on the night of March 30, 2009, the four men were walking on 61st Street between Jefferson and Nassau Streets when Sharp stopped to respond to a text message. After a short time, he heard gunfire and ran.

Philadelphia Police Detective Orlando Ortiz testified that in April 2009, he investigated the shooting of Jackson. Detective Ortiz interviewed Sharp, who appeared nervous but wanted to tell him "what happened on that night of the shooting." *Id.*, at 5. Sharp gave a statement consistent with Jackson's preliminary hearing testimony. Sharp also testified that Burrus gave one gun, used to shoot the victim, to Byrd when walking to the alley before the shooting.

At the conclusion of trial on July 13, 2012, the jury convicted Burrus of the aforementioned crimes. On January 23, 2013, the court sentenced Burrus to 15 to 30 years' incarceration for attempted murder, 3 to 6 years' incarceration for firearm not to be carried without a license, and 2 to 4 years' incarceration for possession of an instrument of a crime, to run consecutively.

On appeal, Burrus raises the following issues for our review:

1. Did the court violate the Confrontation Clause when it allowed the complainant's statement into evidence given the complainant's mental health and drunken state?

2. Was the evidence sufficient to prove attempted murder?

Appellant's Brief, at 3.

Burrus asserts that the trial court committed reversible error by allowing into evidence Officer Egan's testimony regarding the victim's statements moments after the victim was shot. The admission of evidence is committed to the sound discretion of a trial court and will not be reversed absent a clear abuse of discretion. *Commonwealth v. Hyland*, 875 A.2d 1175, 1186 (Pa. Super. 2005). Additionally, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Robertson*, 874 A.2d 1200, 1209 (Pa. Super. 2005).

Pennsylvania Rule of Evidence 803 provides an exception to the hearsay rule for an excited utterance, which is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Pa.R.E. 803(2). To qualify as an excited utterance, the statement must be:

a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both

in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Commonwealth v. Stokes*, 615 A.2d 704, 712 (Pa. 1992). The Court must consider, among other things, whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others, and whether, in fact, he did so. *Commonwealth v. Sanford*, 580 A.2d 784, 788 (Pa. Super. 1990).

Moreover, "there can be no doubt that the declarant's having been shot was an event which is sufficiently startling to satisfy the [requirement that the event be sufficiently startling to render reflective thought processes inoperative.]" *Commonwealth v. Cooley*, 348 A.2d 103, 107 (Pa. 1975). Being shot twelve times was a shocking event that rendered Jackson's statement to Officer Egan one made while still subject to an overpowering emotion.

Burrus further argues that Jackson's declaration did not qualify as an excited utterance exception to the hearsay rule because the statement was the result of a provocation in the form of a question posed by Officer Egan and was, therefore, not spontaneous. This argument is without merit because as our previous cases dictate, "the mere fact that the statements were made in response to questions does not preclude their being spontaneous." *Commonwealth v. Ross*, 498 A.2d 972, 974 (Pa. Super.

1985); *see also Commonwealth v. Bibbs*, 970 A.2d 440, 454 (Pa. Super. 2009).

Burrus also asserts that Jackson's declaration to the police was a testimonial statement made in violation of the Confrontation Clause. This argument is also without merit. In *Michigan v. Bryant*, 131 S.Ct. 1143 (2011), police were called to the scene where they found a gunshot victim in a parking lot. When they asked him what happened, he responded that he had been shot at another location and drove himself to the parking lot. He also identified the shooter. The victim died, and the prosecution introduced the statement as an excited utterance. The United States Supreme Court held that the statement was not testimonial within the meaning of the Confrontation Clause, but rather was an informal exchange where the police obtained basic information about the shooting, the location and identity of the shooter. This information was critical to ensure the safety of the officers and the public, and thus did not offend the Confrontation Clause. Accordingly, the Confrontation Clause is not implicated in this matter.

We next address the claim that the Commonwealth did not present sufficient evidence to support a conviction for attempted murder because it did not present sufficient evidence to establish each material element of the crime charged. We disagree.

When reviewing a challenge to the sufficiency of the evidence claim, the Court must determine "whether, viewing all the evidence admitted at

trial in light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Hennigan**, 753 A.2d 245, 253 (Pa. Super. 2000). A person may be convicted of attempted murder if the defendant takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act and a jury may infer an intent to kill from the use of a deadly weapon on a vital part of the victim's body. **Commonwealth v. Hobson**, 604 A.2d 717 (Pa. Super. 1992). Specific intent may also be inferred from the firing of multiple gunshots. **Commonwealth v. Hughes**, 865 A.2d 761 (Pa. 2004).

Burrus was found guilty of criminal attempt to commit murder. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. §901(a). "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. §2502(a).

Burrus argues that the Commonwealth failed to prove that Burrus fired shots to vital parts of the victim's body or that Burrus personally fired the shots that hit vital parts of the victim's body. The medical records reveal that the gunshot wounds suffered by Jackson were undoubtedly to vital parts of his body; including his chest and abdomen. Additionally, the records

show that Jackson was shot twelve times, which permits an inference of specific intent to kill. ***See Hughes***, ***supra***.

It is well established that an accomplice is criminally liable for the acts of another if he acts with intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense. ***Commonwealth v. Rios***, 721 A.2d 1049, 1053 (Pa. 1998). In order to sustain a conviction for murder via accomplice liability, the Commonwealth's evidence must be sufficient to establish that the appellant possessed a specific intent to kill. ***Id***. Whether an accomplice possessed the same intent to kill as a co-conspirator may be inferred from words, conduct, or the attendant circumstances surrounding the shooting. ***Id***.

The facts establish that Burrus handed a gun to his co-conspirator, Byrd, and the two men shot Jackson. Even if Burrus did not shoot a vital body part or personally fire any shot, the jury could have properly found Burrus to have the requisite specific intent to kill based on his co-conspirator's use of a deadly weapon on a vital part of the victim's body. The jury could have properly inferred a specific intent to kill based on the action of Burrus handing the gun to Byrd. Additionally, Jackson suffered twelve gunshot wounds and the sheer number of bullets fired at the victim allows this Court an inference that Burrus had the specific intent to kill. ***Id.***

Because the trial court did not abuse its discretion by admitting the victim's testimony as an excited utterance, and the evidence was sufficient to establish each element of attempted murder, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2014