J-S52035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
ALBERT ERNEST FLABBI, JR., :
:
Appellant : No. 50 MDA 2018

Appeal from the Judgment of Sentence July 26, 2017
in the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0001119-2015

BEFORE: BENDER, P.J.E., MCLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: **FILED NOVEMBER 21, 2018**

Albert Ernest Flabbi, Jr. (Appellant) appeals from the judgment of sentence imposed after he was found guilty of indecent assault and corruption of minors. We affirm.

On April 22, 2015, Appellant was charged with aggravated indecent assault, statutory sexual assault, sexual assault, indecent assault, corruption of minors, and involuntary deviate sexual intercourse (IDSI),[1] stemming from allegations of sexual abuse committed against his former girlfriend's daughter, S.L.S. The case eventually proceeded to a jury trial. As summarized by the trial court:

> The Commonwealth first presented Donna DeWitt. Ms. DeWitt testified she was living with her daughter, [S.L.S],[11] and [Appellant] in a mobile home on Durneny Road in Greencastle,

---

[1] The Commonwealth withdrew the IDSI charge prior to trial.

---

* Retired Senior Judge assigned to the Superior Court.

Pennsylvania, between 2006 and 2007. Ms. DeWitt testified [Appellant] initially was a father figure to [S.L.S.]; he taught her to fly model airplanes and ride four wheelers. Ms. DeWitt stated she and [S.L.S.] moved out of the mobile home sometime in 2007. Ms. DeWitt also stated she and [S.L.S.] reported the alleged incidents in 2011.[12]

[11] [S.L.S.] was 13 years old between 2006 and 2007.

[12] Ms. DeWitt provided little detail about [the] initial meeting with the police. The Commonwealth later presented Detective Rush to provide further detail.

The Commonwealth next presented the victim, [S.L.S.]. [S.L.S.] testified she lived with [Appellant] when she was between 13-14 years old. [S.L.S.] explained she had a great relationship with [Appellant] in the beginning; she trusted him and considered him a father figure. [S.L.S.] testified her relationship with [Appellant] soured when he inappropriately touched her vagina on four separate occasions.[13]

[13] [S.L.S.] testified in detail regarding the four incidents. [S.L.S.] testified they occurred between March 2006 and May 2007, but was unable to recall the specific dates of each incident.

Regarding the first incident, [S.L.S.] testified [Appellant] asked her for a hug while he was drinking alcohol in the kitchen. [S.L.S.] stated [Appellant] put his hands down her pants and fingered her vagina. [S.L.S.] asked [Appellant] to stop and he did; she walked away and went to bed. [S.L.S.] also testified she was afraid [Appellant] would harm her if she told her mother.

Regarding the second incident, [S.L.S.] testified [Appellant] lay down next to [S.L.S.], turned the lights off, and started touching her. Specifically, [S.L.S.] testified [Appellant] put his hands down her pants and fingered her vagina. [S.L.S.] asked [Appellant] to stop and [Appellant] complied. [S.L.S.] again testified she was afraid [Appellant] would harm her if she told her mother.

Regarding the third incident,[14] [S.L.S.] testified she was sleeping in her bedroom when [Appellant] woke her up;

[Appellant] touched her breast, removed her pants, and fingered her vagina. [S.L.S.] testified [Appellant] got on top of her and stuck his penis inside her vagina. [S.L.S.] pleaded with [Appellant] to stop, but he continued. [S.L.S.] testified she was unable to get [Appellant] off of her. [S.L.S.] was unable to recall how long the encounter lasted.

_____

[14] [S.L.S.] stated the third incident occurred a couple weeks after the second incident.

Regarding the fourth incident, [S.L.S.] testified [Appellant] asked her to come outside while her mother was sleeping; [Appellant] asked [S.L.S.] to sit on his lap. [S.L.S.] listened to [Appellant] because she was afraid of him. [S.L.S.] stated [Appellant] stuck his hand in her pants and fingered her vagina again. [S.L.S.] also stated [Appellant] stopped when she told him to do so.

The Commonwealth last presented Detective Rush. Detective Rush testified he became involved in this case on February 19, 2011. Detective Rush first interviewed [S.L.S.] with her mother present. Detective Rush stated [S.L.S.] was not comfortable speaking about the alleged incidents; however, [S.L.S.] was able to provide Detective Rush with a statement identifying [Appellant] as the man responsible for touching her. Detective Rush located [Appellant] in Boonsboro, Maryland; in October 2014, Detective Rush [went to Maryland] to interview [Appellant]. Detective Rush identified himself to [Appellant] as Pennsylvania State Police and inquired into the allegations regarding [S.L.S.]. [Detective Rush testified that Appellant acknowledged S.L.S. and Ms. DeWitt lived with him for approximately two years. Detective Rush stated that Appellant's first response to his questions about the alleged abuse was that Ms. DeWitt made S.L.S. make these allegations to get money from Appellant. Upon further inquiry from Detective Rush as to whether Ms. DeWitt or S.L.S. had been in contact with Appellant demanding money, Appellant responded "no and he had not had any recent contact[.]"] Detective Rush testified [Appellant] did not expressly deny the allegations and was noticeably uncomfortable during the interview. Rather than expressly deny the allegations, [Appellant] stated he was on a lot of medication and did not remember if it happened. [Appellant] also stated he had a good relationship with [S.L.S.] and did not know her to lie.

The Defense presented Dwayne Kees. Mr. Kees testified he knew [Appellant] for 32 years. Mr. Kees also testified [Appellant] worked for Poole & Son's Excavating in 2007 and suffered [] an injury while working there.

Trial Court Opinion, 12/5/2017, at 4-6 (citations to the record and some footnotes omitted).

Following the close of testimony, Appellant was convicted of indecent assault and corruption of minors.[2] On July 26, 2017, the trial court sentenced Appellant to 11½ to 23½ months' incarceration followed by a five-and-a-half year probationary term.

Appellant thereafter timely filed a post-sentence motion and, following its denial, a notice of appeal.[3] Appellant presents the following issues for this Court's review.

1. Whether the trial court erred by denying [Appellant's] post-sentence motion when the evidence presented at trial was insufficient to support the jury's verdict of guilty?

2. Whether the trial court erred by denying [Appellant's] post-sentence motion when the verdict was against the weight of evidence presented at trial?

3. Whether the trial court erred when it found the testimony of Ms. Reed to be inadmissible as hearsay within hearsay?

4. Whether the Trial Court erred when it precluded Mr. Kees from testifying about [Appellant'S] work injuries and settlement received?

---

[2] The jury found Appellant not guilty of aggravated indecent assault, sexual assault, and statutory sexual assault.

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant's Brief at 7 (unnecessary capitalization omitted). We address these claims sequentially.

Appellant's first issue concerns the sufficiency of the evidence to sustain his convictions. Accordingly, the following principles apply.

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Wanner***, 158 A.3d 714, 717-18 (Pa. Super. 2017) (citation omitted).

In support of this claim, Appellant avers that "even viewing the testimony in the light most favorable to the Commonwealth, there was insufficient evidence to establish that elements of each crime were met and

that the alleged offenses occurred within the times set forth in the criminal information[]." Appellant's Brief at 14 (footnote omitted).[4]

While Appellant avers the Commonwealth failed to establish "every element" of the crimes of which he was convicted, in his brief on appeal, his argument is two-fold. First, he argues the Commonwealth failed to establish S.L.S.'s age. Second, he claims the Commonwealth failed to prove the offenses occurred in the timeline specified in the information. Appellant's Brief at 15-16. Specifically, Appellant avers S.L.S.'s date of birth "was never made a part of the record" and that S.L.S. and Ms. DeWitt provided conflicting information about when they had lived with Appellant. *Id.* at 15.

_____

[4] In response, the Commonwealth argues we should find Appellant's sufficiency claim waived because Appellant "failed to cite with specificity the element upon which he alleges evidence is insufficient to convict, and for that matter, even citing the convictions he is challenging, as he has been convicted of two offenses." Commonwealth's Brief at 3. "[W]hen challenging the sufficiency of the evidence on appeal, the appellant's 1925 statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (quotation marks and unnecessary capitalization omitted). Because Appellant's case is relatively straightforward, his sufficiency claim is based only on two convictions, and the trial court addressed this issue, we decline to find waiver. *See Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007) (finding this Court should have addressed an appellant's sufficiency claim in a "relatively straightforward drug case, [where] the evidentiary presentation spans a mere thirty pages of transcript. It may be possible in more complex criminal matters that the common pleas court may require a more detailed statement to address the basis for a sufficiency challenge. Here, however, the common pleas court readily apprehended [a]ppellant's claim and addressed it in substantial detail.").

Regarding S.L.S.'s age, because Appellant was convicted of age-dependent charges, the Commonwealth was required to establish that, during the relevant time, S.L.S. was under the age of 16.[5] *See* 18 Pa.C.S. §§ 3126(a)(8); 6301(a)(1). Appellant is correct that there WAS no testimony that established S.L.S.'s date of birth. However, the trial court found that during the time of the aforementioned incidents it was "undisputed that [S.L.S.] was under 16 years of age, [Appellant] was four or more years older than [S.L.S.,] and [S.L.S. and Appellant] were not married." Trial Court Opinion, 12/5/2017, at 8. The court conceded that S.L.S. "was unable to determine exactly how old she was at the time of the four incidents." *Id.* at n.17. Nonetheless, the court found the testimony sufficient to determine S.L.S.'s age because "[a]t the time of trial, [S.L.S.] was 23 years old. The four incidents occurred more than 10 years ago between March 2006 and May 2007." *Id.*

Our review of the record confirms that at the time of trial in 2017 S.L.S. was 23 years old. N.T., 3/23/2017, at 32. Thus, between 2006 and 2007, when the incidents were alleged to have occurred, S.L.S. was under the age of sixteen. Additionally, both S.L.S. and Ms. DeWitt testified that

_____

[5] We note a victim need only be under the age of eighteen for a defendant to be found guilty of corruption of minors. However, because Appellant was convicted of indecent assault of a child under the age of 16, the Commonwealth was required to prove S.L.S. was less than 16 years of age at the time of the abuse.

S.L.S. was 13 or 14 years old during the relevant time.[6]  *Id.* at 32, 71.

Appellant cites no case law to support that this testimony alone is

insufficient to prove the age element of the crimes Appellant was convicted

of.  Nor does Appellant provide any relevant law to support his contention

that S.L.S.'s date of birth needed to be made part of the record in order to

find Appellant guilty of the aforementioned crimes.  The foregoing testimony,

if believed by the jury, was sufficient to establish S.L.S.'s age.

With respect to his latter claim, Appellant cites **Commonwealth v.**

**Brooks**, 7 A.3d 852 (Pa. Super. 2010), to support his argument that the

Commonwealth failed "to prove that the offenses occurred within the time

set forth in the [c]riminal [i]information."  Appellant's Brief at 16.  In

**Brooks**, this Court noted that

> [w]hen the precise date of [an offense] is not known or if the
> offense is a continuing one, Rule 560(B)(3) of the Pennsylvania
> Rules of Criminal Procedure provides that a criminal information
> signed by the attorney for the Commonwealth shall be valid and
> sufficient in law if it contains ... an allegation that it was

---

[6] We are cognizant that S.L.S.'s testimony at trial that she was between 13-14 years old when Appellant abused her was contradictory to her testimony at the preliminary hearing that she was between 14-15 years old.  N.T., 3/23/2017, at 102.  Despite this, there was no evidence introduced to dispute S.L.S.'s testimony that she was under the age of 16 when she was abused by Appellant.  Furthermore, it is in the province of the fact-finder, and not the role of this Court, to resolve any inconsistencies in a witness's testimony.  **See Commonwealth v. Lewis**, 911 A.2d 558, 566 (Pa. Super. 2006) ("Questions concerning inconsistent testimony ... go to the credibility of witnesses. This Court cannot substitute its judgment for that of the jury on issues of credibility.")  (citation and quotation marks omitted).

committed on or about any date fixed within the statute of limitations[.]

*Id.* at 859 (quotation marks omitted). In **Brooks**, this Court found that the Commonwealth provided sufficient evidence of when the crimes occurred, where Brooks "was charged with committing the sex offenses against the victims during the summer months of 2001, and [one of the victims] testified that she recalled the abuse occurring when it was warm outside and she was wearing shorts when the sexual abuse occurred." *Id.*

The criminal information cites March 1, 2006 to May 31, 2007 as the relevant period of time when the abuse was alleged to have occurred. Criminal Information, 7/24/2015. While S.L.S. was unable to testify to the time of year or what she was wearing when the abuse occurred, S.L.S. testified that the abuse started after she began living with Appellant. N.T., 3/23/2017, at 65-67. Similarly, while Ms. DeWitt was unable to provide the exact timing of when she had moved in and moved out of the home shared with Appellant, her testimony was that she had lived with Appellant for approximately two and a half years "around 2007[,]" which is within the time frame alleged in the information. *Id.* at 32; Criminal Information, 7/24/2015. Viewed in the light most favorable to the Commonwealth as the verdict winner, this testimony was sufficient to prove that the abuse occurred during the time specified in the information. Thus, Appellant's sufficiency claim fails.

We now turn to Appellant's contention that the jury verdict was against the weight of the evidence.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted). "Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." *Commonwealth v. Handfield*, 34 A.3d 187, 208 (Pa. Super. 2011) (quoting *Commonwealth v. Cain*, 29 A.3d 3, 6 (Pa. Super. 2011)).

In support of his weight claim, Appellant argues that S.L.S.'s testimony was so inconsistent and vague that the trial court abused its discretion in denying his post-sentence motion. Appellant's Brief at 17-18.

In addressing Appellant's claim, the trial court found that Appellant did not assert "any facts which are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." Trial Court Opinion, 12/5/2017, at 9 (quotation marks and citation omitted). The court found Appellant was not entitled to relief where he "merely attacks the victim's inconsistent testimony[.] … [I]t is the jury's role to determine the credibility of a witness and resolve any inconsistencies. The jury is entitled to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder." *Id.* (quotation marks omitted).

In reviewing the issue before us, we reiterate that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Widmer*, 744 A.2d at 753.

> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Id.* (citation omitted).

With this in mind, upon review of the record, we find no abuse of discretion in the trial court's determination. Appellant has not alleged, and

we do not conclude, that the trial court acted unreasonably, or displayed prejudice, bias, or ill-will when dismissing Appellant's weight claim.  No relief is due.[7]

Appellant's final two issues challenge the trial court's evidentiary rulings.  Specifically, Appellant contends the court erred in precluding: (1) the testimony of Appellant's co-worker Susan Reed, about a statement Appellant made to her concerning Ms. DeWitt and S.L.S.; and (2) testimony from Mr. Kees about Appellant's work injuries.  Appellant's Brief at 19-22.

> The admissibility of evidence is within the sound discretion of the trial court, and this Court will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion.  An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

**Commonwealth v. Alicia**, 92 A.3d 753, 760 (Pa. 2014) (citations omitted).

We address first Appellant's claim that the trial court improperly precluded Ms. Reed's proposed testimony.

---

[7] We recognize that S.L.S.'s testimony was inconsistent at times and did not comport with previous sworn statements.  However, Appellant was given the opportunity to, and did in fact present, evidence of these inconsistences and highlighted the absence of particular details in S.L.S.'s testimony.  **See Commonwealth v. Love**, 896 A.2d 1276, 1283 (Pa. Super. 2006) ("We may not weigh the evidence or substitute our judgment for that of the fact-finder.  … When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part, or none of the evidence.").  **See also Commonwealth v. McDonough**, 96 A.3d 1067, 1069 (Pa. Super. 2014) ("The uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant.").

Appellant sought to call Ms. Reed to testify about a conversation they had where Appellant relayed he had spoken with Ms. DeWitt and Ms. DeWitt had the "intention to accuse [Appellant] of sexual misconduct with [S.L.S.]." Appellant's Brief at 18. Although it is unclear from the record when the issue of this testimony first arose during trial, the trial court informed the parties that "[a]fter conducting research [the trial court has] decided that the statement by Ms. Reed reporting [Appellant's] statement of [Ms. DeWitt] is hearsay within hearsay and will be inadmissible."[8] N.T., 3/23/2017, at 80. Ms. Reed did not testify at the trial.

> Initially we note,
>
> it is an appellant's duty to ensure that the certified record is complete for purposes of review. … Our Court has stated a failure to ensure that the record provides sufficient information to conduct a meaningful review constitutes waiver of the issue sought to be reviewed. Where portions of a proceeding are unrecorded, appellant's burden to supply a record may be satisfied through the statement in absence of transcript procedures.

***Commonwealth v. Lopez***, 57 A.3d 74, 82 (Pa. Super. 2012) (quotation marks and brackets omitted).

In this case, absent from the record is the necessary information needed to assess the issue before us. Importantly, we are unaware of what,

---

[8] Because the proposed testimony is hearsay within hearsay, each separate part of the statement must fall within an enumerated exception. On appeal, Appellant does not assert which exception applies to Ms. DeWitt's statement to Appellant, and addresses only his purported "excited utterance" to Ms. Reed. However, in light of our disposition, as detailed *infra*, we need not address this.

if any, offer of proof was made regarding this testimony to the trial court prior to its decision to preclude Ms. Reed's testimony. Additionally, there is no motion in *limine* that sets forth the necessary information needed to assess whether the trial court properly disallowed this testimony. Specifically, the record is silent as to: (1) how much time elapsed between Appellant's phone call with Ms. DeWitt and Appellant's statement to Ms. Reed; (2) what exactly was said to Ms. Reed; and (3) how Appellant relayed this information to Ms. Reed. In fact, the only reference to this proposed witness and testimony in the record is in Appellant's petition to issue subpoenas for out of state witnesses. **See** Petition to Issue Subpoena for Out of State Witness to Appear for Criminal Trial, 3/20/2017, at 2 (unnumbered) ("[Ms.] Reed, as Office Manager for Poole and Sons told police that at some time while [Appellant] worked there prior to [December 4, 2007], she witnessed him on the telephone in an argument with [Ms. DeWitt], thereafter, he told her that [Ms. DeWitt] was accusing him of molesting her daughter."). Thus, we find this issue waived.[9]

---

[9] Here, the trial court found Appellant "did not make a spontaneous declaration while overpowered by emotion caused by an unexpected and shocking occurrence. [Appellant] simply reported Ms. DeWitt's accusation to [Ms. Reed] following an argument with Ms. DeWitt." Trial Court's Opinion Sur Pa.R.A.P. 1925(a), 3/1/2018, at 12. If the trial court's assessment of the proposed testimony is accurate, we would find the trial court would be well within its discretion to preclude this testimony. **See Commonwealth v. Sanford**, 580 A.2d 784, 788 (Pa. Super. 1990) (noting that a statement in narrative form is "inadmissible."). However, the absence of the aforementioned information precludes us from doing so.

Lastly, Appellant argues the trial court erred in precluding testimony from Mr. Kees regarding Appellant's work-related injury. Briefly, in an effort to have a complete record in the event of appellate review, after submission of the case to the jury, the trial court allowed Appellant to put his requests on the record regarding various pieces of evidence it sought to admit that has been excluded by the trial court, including the proposed testimony of Mr. Kees. Appellant wished to have Mr. Kees testify that: (1) Appellant suffered a work-related injury in 2007; (2) as a result of that work injury Appellant broke his neck and had to have his pinky finger and a portion of his ring finger removed, and (3) Appellant received a settlement related to this injury in 2012. N.T., 3/24/2017, at 70-73.

Ultimately, the trial court permitted Mr. Kees to testify at trial that Appellant was injured at work and when the work injury occurred "for the purpose of establishing [a] timeline. However, Mr. Kees was not permitted as a lay witness to testify about the work injuries sustained by [Appellant], especially when there was no medical evidence or evidence from an employer to support the allegations of the injury." Trial Court's Opinion Sur Pa.R.A.P. 1925(a), 3/1/2018, at 15 (footnote omitted). The trial court also precluded testimony about the settlement Appellant received. The court found that such testimony was irrelevant because the settlement occurred in 2012 and "[t]he allegations were made first to the police in 2011." N.T., 3/24/2017, at 72-73.

On appeal, Appellant concedes Mr. Kees was not qualified to "testify as to the nature of Appellant's broken neck." Appellant's Brief at 21. However, Appellant avers Mr. Kees, as a layperson, could "rationally perceive and testify to the fact that fingers were no longer on a hand." *Id.* Appellant contends Mr. Kees's testimony "would provide context for [Appellant's] statement" to Detective Rush that he believed Ms. DeWitt made S.L.S. report false allegations of sexual abuse against him for money and would be "relevant and important to illustrate to the jury [S.L.S.'s] lack of credibility" since she failed to disclose that during the incidents of abuse Appellant did not have all of his fingers. Appellant's Brief at 21-22.

Upon review, we find the trial court did not abuse its discretion by disallowing the aforementioned testimony. First, we agree with the trial court that, because the allegations were made in 2011, testimony that Appellant received a work-injury settlement in 2012 was irrelevant.

> In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Page*, 965 A.2d 1212, 1219 (Pa. Super. 2009). Here, Appellant contends testimony about the 2012 settlement would support his statement made to Detective Rush that there was an ulterior motive behind

the allegation of sexual abuse made by S.L.S., specifically, that Ms. DeWitt wanted money from Appellant. However, Detective Rush testified that after Appellant made this statement, Detective Rush inquired into whether Ms. DeWitt or S.L.S. had been in contact with Appellant demanding money, and Appellant responded that there had been no recent contact. N.T., 3/23/2017, at 137. Furthermore, no testimony was elicited that Ms. DeWitt was aware of the pending litigation or potential settlement related to these work-place injuries.

Nor do we find the trial court abused its discretion when it did not permit Mr. Kees to testify that a portion of Appellant's ring finger and his entire pinky finger were "no longer on his hand." Appellant's Brief at 21. Appellant argues that this information would bring into question S.L.S.'s credibility because she did not disclose that Appellant was missing fingers during the time of the assaults. *Id.* at 21-22. The trial court found that there was no testimony elicited from Ms. DeWitt or S.L.S. about the injuries or nature of the injuries. N.T., 3/24/2017, at 73. Further, the court found that the evidence would be "improper in an effort to engender sympathy for" Appellant. *Id.*

We agree with the trial court that Appellant failed to lay any foundation concerning Appellant's missing fingers. Other than questioning S.L.S. about a letter written to Appellant that she did not remember authoring about Appellant's injuries, there is no testimony about his missing

fingers. Furthermore, we disagree with Appellant that this evidence would have illustrated S.L.S.'s "lack of credibility." Appellant's Brief at 13. S.L.S.'s allegations are not rendered incredible because she did not disclose that Appellant did not have all of his fingers at the time of the assault. Even if Appellant did not have all his fingers, he still could have digitally penetrated S.L.S. as she described.

Accordingly, after a thorough review of the record and briefs, we find Appellant has presented no issue on appeal which would convince us to disturb his judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2018