627 A.2d 785

**COMMONWEALTH of Pennsylvania**

v.

**Sidney Brian WATSON, Appellant.**

Superior Court of Pennsylvania.

Submitted April 5, 1993.

Filed July 7, 1993.

Lester G. Nauhaus, Public Defender, Pittsburgh, for appellant.

Mitchell A. Kaufman, Asst. Public Defender, Pittsburgh, for Com., appellee.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

WIEAND, Judge.

Sidney Brian Watson was tried non-jury and was found guilty of aggravated assault, recklessly endangering another person and endangering the welfare of a child. Post-trial motions were denied, and Watson was sentenced to serve a term of imprisonment for not less than four (4) years nor more than twelve (12) years. On direct appeal from the judgment of sentence, Watson asserts that the trial court erred by admitting into evidence and giving consideration to a hearsay statement made by the three year old, alleged victim. He also contends that, absent this hearsay evidence, there was no evidence to establish that he was responsible for the injuries suffered by his three year old son. Finding no merit in these contentions, we affirm the judgment of sentence.

On April 29, 1991, City of Pittsburgh Police Officer Karen Harris responded to a report that a child had been burned. Upon arrival at the scene, Harris learned that appellant was the father of the three year old victim, Isaiah Pierce. Harris observed appellant arguing with the child's mother, Ronetta Pierce, who was seeking an explanation of what had happened to her child's hands. To this appellant reportedly responded that the child had stuck his hand in a bowl of soup. As a part of her investigation, Officer Harris found an empty can of Spaghettios in a trash can; two skillets on the stove, one containing Spaghettios and the other containing Crisco oil; and a bowl of Spaghettios on the table. While the victim was being treated in an ambulance, Officer Harris asked the child how he had hurt his hands. Three year old Isaiah Pierce responded, "My daddy did it."

The victim was taken to the Burn Center at Mercy Hospital where he was treated for severe burns to his left hand and to the index finger of his right hand. The child's treating physician was Dr. Mary Jeanne Korb, the director of the Burn Center, whose testimony was summarized in the trial court's post-trial opinion as follows:

Dr. Korb testified that Isaiah suffered full thickness burns over the entire back portion of his left hand as well as on

portions of his fingers and palm. She described full thickness burns as "... where the total skin of that area has been destroyed." Such burns "... do not heal except from the side or from other normal skin from the sides; they almost always require skin grafting; the hair follicles are destroyed; the nerve endings are destroyed and they always heal with scars."

The doctor noted that the burns on Isaiah's hands had clear lines of demarcation. These, according to Dr. Korb, are [more] consistent with the hand having been forcibly immersed in a hot substance than with a hand accidently [sic] placed in a hot substance. In the latter case, the line of demarcation between the burned skin and the healthy skin is marked by feathering and flash marks as a result of sudden movement.

The doctor also described the treatment Isaiah received. She said that for several days after the burn Isaiah had to have the wound debrided. Debriding involves the pealing [sic] off of the dead skin from the wound and is an extremely painful procedure. The procedure was so painful in Isaiah's case that they had to cease such procedures and proceed to surgery. Even after the surgery, Isaiah suffered from decreased grip strength and a limitation on the range of motion of the hand. The doctor ultimately concluded that the nature of the burn, the lack of flash marks and the sharpness of the demarcation, was consistent with the hand having been forcibly immersed in an extremely hot liquid rather than the child accidently [sic] reaching into a bowl or pot of hot soup or "Spaghettios." (citations to record omitted).

■ We reject appellant's request for a limited review of the evidence to determine its sufficiency to support his convictions. " 'It is well settled ... that in determining the sufficiency of the evidence to support the verdict, we are required to consider all evidence actually received, whether the trial court's rulings on evidence were correct or incorrect.' " *Commonwealth v. DiSabatino*, 399 Pa.Super. 1, 4, 581 A.2d 645, 646 (1990), quoting *Commonwealth v. Pankraz*, 382 Pa.Super.

116, 119–120, 554 A.2d 974, 976 (1989). "The question of sufficiency is not assessed upon a diminished record. Where improperly admitted evidence has been allowed to be considered by the [factfinder], its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial." *Commonwealth v. Smith,* 523 Pa. 577, 582, 568 A.2d 600, 603 (1989) (citations omitted).

In evaluating the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence was sufficient to have permitted the trier of fact to find that each element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Smith, supra* at 581, 568 A.2d at 602; *Commonwealth v. Aulisio,* 514 Pa. 84, 91, 522 A.2d 1075, 1079 (1987). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). Moreover, the facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the [factfinder] unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943).

So viewed, the evidence in the instant case was clearly sufficient to permit the trier of fact to conclude, beyond a reasonable doubt, that appellant had forcibly immersed his son's hand in a hot substance, thereby causing severe burns. Appellant was overheard telling the child's mother that the child had placed his hand in a hot bowl of soup. However, the victim's treating physician testified that the child's injuries were inconsistent with an accidental burn and concluded,

because of the pattern of the burn marks, the sharp demarcation and the lack of any feathering, that the child's injuries were more consistent with having had his hand placed into and forcibly held in a hot substance. Finally, when the victim was asked how his hands had been burned, he responded that "My daddy did it." From this evidence, the trial court could infer that appellant, the victim's father, had been responsible for causing the burns to the child's hands. The evidence, therefore, was sufficient to sustain appellant's convictions for aggravated assault, recklessly endangering another person and endangering the welfare of a child.

■ Appellant's remaining contention is that the trial court erred by receiving into evidence the victim's hearsay statement, "My daddy did it," as an excited utterance. Appellant argues that the victim's statement was not a spontaneous utterance made while under the influence of a startling event, but, rather, an ambiguous response to police questioning. The statement, he suggests, was influenced by the lapse of an undisclosed period of time after the child had been injured, as well as by the argument which had ensued between the child's parents.

In *Commonwealth v. Zukauskas*, 501 Pa. 500, 462 A.2d 236 (1983), the Supreme Court explained the excited utterance exception to the hearsay rule in the following terms:

An excited utterance is the event speaking and not the speaker. It is an exception to the hearsay rule, carved from human experience, which teaches that an unreflected, spontaneous utterance made under the impact of a shocking, unexpected emotion, precipitated by a traumatic event, renders the speaker the medium and not the message. Such an utterance is allowed in evidence because it is spontaneous and unreflected, without influence from thought, design and reason. It is not accepted because the statement is or must be true, but because it could be at least as true as any other evidence. Before such evidence is received, it must be carefully weighed. As this Court stated in *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978):

"To come within the excited utterance exception to the hearsay rule, a statement must be:

... 'a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.' " (citation omitted)

*Id.* at 137–138, 383 A.2d at 860.

. . . .

[T]here is no precise rule as to the length of time passing between the event and the alleged excited utterance...., except it must be:

"So near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective facilities."

*Id.* Length of time is an element that must be weighed along with other considerations. It varies with the circumstances and from case to case. It does not alone decide admissibility. The question is not how long one or when one is seized by an event, but rather was he seized at all. Time itself is not dispositive and is determined, ad hoc, case by case.

*Id.* at 503–504, 462 A.2d at 237–238. See also: *Commonwealth v. Green,* 487 Pa. 322, 326–328, 409 A.2d 371, 373–374 (1979); *Commonwealth v. McEachin,* 371 Pa.Super. 188, 200, 537 A.2d 883, 889 (1988). " '[T]he mere fact that a statement is made in response to a question does not prevent its admission as a res gestae statement.' " *Commonwealth v. Pronkoskie,* 477 Pa. 132, 141, 383 A.2d 858, 862 (1978), quoting *Commonwealth v. Cooley,* 465 Pa. 35, 42, 348 A.2d 103, 107

(1975). See also: *Commonwealth v. Sanford*, 397 Pa.Super. 581, 592–593, 580 A.2d 784, 789–790 (1990).

After careful review, we are satisfied that the victim's statement, "My daddy did it," was properly received into evidence. The trial court reasoned in its post-trial opinion that:

Having his hand forcibly immersed in a hot liquid was undoubtedly a terrifying and shocking occurrence for Isaiah Pierce. Though the record does not clearly establish how much time elapsed between this occurrence and the utterance, it is clear that this child was still suffering from the emotional shock and trauma of that incident when he made the statement. Officer Harris testified that when she observed Isaiah at the time he made this statement "... he was crying and scared and nervous." Dr. Korb stated that burns such as those suffered by Isaiah are very painful; that adults who suffer such burns are not able to obtain relief even when administered morphine. The Court is satisfied that at the time Isaiah told this officer that his "Daddy" hurt his hand he was suffering from severe emotional trauma as well as [ ] intense physical pain. Moreover, it is clear to this Court that when this child made the statement implicating his father he was, because of that intense pain and emotional trauma, incapable of reflecting on the question posed by Officer Harris. His response was spontaneous and certainly not the product of reflective thought.

Defendant also claims that because there was no evidence establishing how much time elapsed between the injury and the statement it could not have been an excited utterance. Whether the time lag between the startling event and the utterance is so long that the spontaneity of the utterance is negated is to be determined from the particular circumstance[s] of each case. *Commonwealth v. Rhoades*, Supra. The doctor testified that this injury occurred no more than twenty four (24) hours from the time she first treated Isaiah. More likely, the injury occurred shortly before the Police and medical personal [sic] arrived. Whenever it

occurred, it is clear that this child was still in intense pain. In effect, the traumatic incident was continuing when the statement was made. The uncertainty of when the incident occurred does not obviate the fact that this child was continuing to suffer from the shock and trauma of the injury and that his statement was, therefore, an excited utterance. (citations to record omitted).

We agree fully with the trial court's analysis of this issue.

In response to appellant's claim that the child's statement may have been influenced by the argument between his parents, we observe that this contention is refuted by the record. Officer Harris testified that the victim had not been in the house at the time when appellant and the victim's mother were arguing about the manner in which the victim had been injured. It would appear that, at the time of the argument between his parents, the child had already been placed into an ambulance. Therefore, it was not likely that he was influenced by the arguments between his parents. In any event, the circumstances surrounding the victim's statement warranted the trial court's conclusion that the child's statement implicating appellant was a spontaneous utterance made in response to a traumatic event and the severe physical pain which accompanied it. The statement, therefore, was properly received as an excited utterance. Whether it was influenced by other events, of course, was relevant to the weight to be placed thereon. Under the circumstances of this case, however, those events did not destroy the admissibility of the child's statement.

The judgment of sentence is affirmed.